<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALICE O'BRIEN,<br><br>  Plaintiff,<br><br>v.<br><br>PHILIP SASSO, and THE PAIN AND SURGICAL CENTER OF LANGHORNE<br><br>  Defendants. | Civil Action No.:<br>11-4083 (PGS)<br><br>MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter comes before the Court on Defendants Philip Sasso and The Pain and Surgical Center of Langhorne's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff has cross-moved to transfer the case to the United States District Court for the Eastern District of Pennsylvania and, in the alternative, for jurisdictional discovery. In her Complaint, Plaintiff Alice O'Brien alleged five counts of ordinary and professional negligence. For the reasons set forth below, this case shall be transferred to the United States District Court for the Eastern District of Pennsylvania.

I

Plaintiff Alice O'Brien ("Plaintiff") is domiciled and resides in Manchester, New Jersey and for jurisdictional purposes is a citizen of New Jersey. Defendant Philip Sasso ("Dr. Sasso") is a medical doctor licensed by the Commonwealth of Pennsylvania and resides in Lower Gwynedd, Pennsylvania. Sasso Aff. ¶¶ 2-3. Pain Management Centers of America, d/b/a The Pain and Surgical Center of Langhorne ("Langhorne Center") is a limited liability organization organized under the laws of the Commonwealth of Pennsylvania, and located in Langhorne,

Pennsylvania. Dr. Sasso was Plaintiff's treating physician at the Langhorne Center.

Dr. Sasso is board certified in anesthesiology with a specialty board certification in pain management. Dr. Sasso is not licensed to practice medicine in the state of New Jersey. Dr. Sasso affirms that he has never treated a patient in New Jersey. Dr. Sasso does not maintain an office or advertise his services in New Jersey. Dr. Sasso affirms that he does not pay income tax or maintain a bank account in New Jersey. Additionally, at the time the Plaintiff suffered her injury, the Langhorne Center did not have any employees that resided in New Jersey. Throughout the time Dr. Sasso treated Plaintiff, he routinely sent correspondence to Plaintiff's family physician in New Jersey as a professional courtesy. Additionally, Dr. Sasso and the Langhorne Center treated other New Jersey residents other than Plaintiff.  In 2009, there were approximately 3,600 patient visits to the Langhorne Center; 175 of those visits were by New Jersey residents. In 2009, Dr. Sasso treated 22 distinct patients from New Jersey.

Plaintiff's Injury

On December 12, 2008, Plaintiff first received treatment at the Langhorne Center. Plaintiff asserts that Dr. John Irwin, an orthopedic surgeon practicing in Pennsylvania, referred her to the Langhorne Center to receive treatment for spinal stenosis. Plaintiff affirms that at the end of her first treatment, the receptionist at the Langhorne Center asked Plaintiff if she would like to make another appointment. Plaintiff did not schedule another appointment at that time but did return nine more times.  On May 28, 2009, Plaintiff's third visit to the Langhorne Center, she fell and suffered the injuries that are the subject of the present lawsuit.

Shortly before Plaintiff fell, a Langhorne Center staff member was allegedly escorting Plaintiff to the treatment room at the Langhorne Center. Plaintiff alleges that the staff member walked ahead of her, momentarily leaving her side.  As a result, the staff member was unable to

prevent Plaintiff from falling when she eventually lost her balance.  Plaintiff fell, dislocated her shoulder, and suffered contusions and abrasions on her face. Plaintiff alleges that after falling, she implored the Langhorne Center staff to retrieve her daughter from the waiting room, but the staff's response to her request was slow, furthering her emotional distress. Plaintiff contends that Langhorne Center staff did not provide her with pain treatment following her fall, but instead arranged to have her taken to St. Mary's Hospital by ambulance. Plaintiff alleges her fall at the Langhorne Center incapacitated her for approximately four to five weeks.  Plaintiff received pain therapy from the time of her injury through the first week of September 2009.  This entire time, Plaintiff resided with her daughter in Pennsylvania.

II

A federal court sitting in diversity must conduct a two-step analysis to determine whether personal jurisdiction exists over the defendant. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  First, the court must apply the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. *Id.*   Second, the court must determine whether the exercise of personal jurisdiction would meet Due Process concerns. Federal and state courts have interpreted New Jersey's long-arm rule, N.J. Civil Practice Rule 4:4-4(c), as extending jurisdiction over non-residents "to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (*quoting Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971)), *rev'd on other grounds*, 131 S. Ct. 2780 (2011); *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696 (3d Cir. 1990).  In cases where the defendant has properly raised a jurisdictional defense, "the plaintiff bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic* 897 F.2d at 699.  A plaintiff can meet this burden by establishing either general or specific

jurisdiction over the defendant. *Id*.  Where, as here, the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum, the court is said to exercise specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Specific jurisdiction over a defendant exists when the defendant has purposefully directed activities at residents of the forum and the claim directly relates to or arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  In order for a court to properly exercise specific jurisdiction under the Due Process Clause, the plaintiff must satisfy a two-part test.  First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the court must determine, in its discretion, that to exercise personal jurisdiction would "comport with traditional notions of fair play and substantial justice." *Id*.  A plaintiff need only make a prima facie demonstration of jurisdiction by showing, with sufficient particularity, the presence of contacts between the defendant and the forum. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  In examining whether the plaintiff has satisfied this prima facie burden, a court must resolve all disputes of material fact in favor of the plaintiff. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Minimum contacts must have a basis in "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Jurisdiction is proper where the contacts proximately result from the defendant's own actions, which create a substantial connection with the forum. *Burger King Corp.*, 471 U.S. at 475.  Although a

4

defendant's entrance into the forum state emboldens the defendant's affiliation with that forum, physical entrance into the forum is not required. *Id.* at 476.  If the court determines that the defendant purposefully established minimum contacts with the forum state, then the court must decide whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Id.*  In addressing this question, a court may contemplate "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." *Miller Yacht Sales, Inc.*, 384 F.3d at 97.  The analysis turns on whether the defendant could "reasonably participate being hauled into court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

III

Based on the submissions of the parties in this case, the Court cannot find that Dr. Sasso or the Langhorne Center have availed themselves of the privilege of conducting business in New Jersey. Plaintiff is a New Jersey resident who sought the medical services provided by Pennsylvania citizens in Pennsylvania.  Dr. Sasso and the Langhorne Center correctly cite to *Galineau v. New York University Hospital*, 375 F. Supp. 661 (D.N.J. 1974) in support of their motion to dismiss.  The facts in *Galineau* are quite similar to those in the instant case.  In *Galineau*, the district court determined that the defendant, New York University Hospital, conducted no business in New Jersey, nor did it employ any agents or maintain an office in this state. *Galineau*, 375 F. Supp. at 666.  Moreover, in *Galineau*, the defendant's sole contacts with New Jersey stemmed from the fact that it admitted as patients New Jersey residents, who traveled to New York to receive treatment. *Id.* at 663-64.  The court held that to subject the defendant hospital to personal jurisdiction in New Jersey "would be fundamentally unfair,

5

substantially unjust, and thus be a transgression of due process." *Id*. at 666. Specifically, the court observed:

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

*Id*. at 667.

In her opposition to the motion to dismiss, Plaintiff cites to *Lebel v Everglades Marina, Inc*. 558 A.2d 1252 (N.J. 1989). Plaintiff asserts that the court in *Lebel* ruled that "minimum contacts exist so long as the defendant's efforts were purposely directed toward a resident . . . of this State and the defendant was aware that the sale would have direct consequences in New Jersey." *Id.* at 7. However, in *Lebel* it was not merely the fact that the defendant had contact with a New Jersey resident, but the nature of the defendant's activities which were purposefully directed by the defendant to the plaintiff while the plaintiff was in New Jersey. *Lebel*, 558 A.2d at 1257. In *Lebel*, the defendant's representative called the plaintiff in New Jersey to solicit a sale and negotiate the terms of a sale agreement. *Id.* at 1253. The defendant also sent the sale agreement to the plaintiff in New Jersey, where the plaintiff signed it. *Id.* In the instant matter, Plaintiff either called the Langhorne Center to schedule her appointments or made them in person in Pennsylvania. The only instance Plaintiff points to in which the Langhorne Center or Dr. Sasso made an outgoing phone call regarding Plaintiff's care is a single phone call to the home of Plaintiff's daughter, who resides in Pennsylvania.

Plaintiff further argues that because Dr. Sasso and the Langhorne Center asked Plaintiff if she would like to schedule a follow-up appointment after her initial visit, they solicited Plaintiff and thereby subjected themselves to personal jurisdiction in New Jersey. This argument has no merit. Such solicitation would have taken place in Pennsylvania and been directed at Plaintiff, not the forum state. "The substantial connection between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed *toward the forum state* [emphasis added]." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). The focus is on "the relationship among the defendant, the forum, and the litigation." *Shaffer*, 433 U.S. at 204. Thus, Plaintiff has failed to carry her burden of showing with reasonable particularity that sufficient contacts between Dr. Sasso and New Jersey, or the Langhorne Center and New Jersey exist to support personal jurisdiction.

IV

Plaintiff requested to stay the motion to dismiss for discovery if Dr. Sasso and the Langhorne Center "are not willing to provide complete certifications of the extent and number of New Jersey citizens they treat and the solicitation of those patients." The information requested by Plaintiff is contained in the attachments to the Defendants' reply brief. Therefore, Plaintiff's request is moot.

V

In lieu of dismissal, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), the Court will transfer this case to the United States District Court for the Eastern District of Pennsylvania. Moreover, because Plaintiff brought this case in the incorrect forum, it is appropriate for the Court to transfer it to the forum where it could have originally been brought. 28 U.S.C. § 1406(a);

*Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985). Furthermore, Dr. Sasso and the Langhorne Center do not oppose the transfer of this matter to the United States District Court for the Eastern District of Pennsylvania.

ORDER

This matter having come before the Court on Defendants' motion to dismiss [Docket Entry No. 7], and this Court having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78; and for the reasons stated above;

IT IS on this 13th day of March, 2012,

ORDERED that Clerk of the Court transfer this case to the United States District Court for the Eastern District of Pennsylvania; and it is further.

ORDERED that the Plaintiff's motion to stay pending discovery [Docket Entry No. 11] is denied; and it is further

ORDERED that the Defendants' motion to dismiss [Docket Entry No. 7] is denied as moot.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.